IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WORLD TRIATHLON CORPORATION, a Florida Corporation, | ) ) ) ) | CIVIL NO.  05-00351 JMS/KSC |
| Plaintiff, | ) ) | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S |
| vs. | ) ) | MOTION FOR PARTIAL SUMMARY JUDGMENT |
| JOHN DUNBAR, IAN EMBERSON, HENRY FORREST, GORDON HALLER, ARCHIE HAPAI and RALPH YAWATA, individually collectively d/b/a HAWAIIAN IRONMAN TRIATHLON ORGANIZING COMMITTEE, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

I. INTRODUCTION

Plaintiff World Triathlon Corporation ("WTC" or "Plaintiff") has

moved the court for partial summary judgment as to its First Amended Complaint

filed against John Dunbar, Ian Emberson, Henry Forrest, Gordon Haller, Archie

Hapai, and Ralph Yawata, individually and collectively doing business as

("d/b/a") Hawaiian Ironman Triathlon Organizing Committee ("HITOC").[1]  Based on the following, the court GRANTS IN PART and DENIES IN PART the Plaintiff's motion.

## II.  BACKGROUND

The court set forth the relevant background facts in its October 18, 2005 Order Granting Plaintiff's Motion for Preliminary Injunction, and the court incorporates those background facts herein.

The Plaintiff filed its Complaint against Dunbar (individually and d/b/a HITOC) on May 25, 2005.  On July 29, 2005, Dunbar filed his Answer to the Plaintiff's Complaint; Dunbar also submitted counterclaims based on Hawaii Revised Statutes (HRS) chapter 481A and common law unfair competition.[2]  On October 18, 2005, the court granted WTC's motion for a preliminary injunction. On November 3, 2005, the Plaintiff filed its First Amended Complaint, adding Ian Emberson, Henry Forrest, Gordon Haller, Archie Hapai, and Ralph Yawata as defendants; on December 5, 2005, the Plaintiff filed the instant motion for partial

---

[1] WTC has settled its claims against Emberson, Forrest, Yawata, and Haller.  On January 3, 2006, the Clerk of Court entered default against Hapai, but the court set aside this default at the February 21, 2006 hearing.  Consequently, the court's reference to "the Defendants" throughout this order will refer collectively to Dunbar and Hapai, individually and d/b/a HITOC.

[2] The Plaintiff's Complaint also included claims against Dunbar d/b/a HITOC based on, *inter alia*, HRS chapter 481A and common law unfair competition.

summary judgment.  Dunbar, Hapai, and the other defendants filed their Answer to the First Amended Complaint on January 17, 2006.

The motion for preliminary injunction concerned Dunbar (individually and d/b/a HITOC) alone, whereas the instant motion concerns both Dunbar and Hapai.  There is uncontroverted, though limited, evidence that Hapai has infringed on the Plaintiff's trademarks by selling or receiving t-shirts, as recently as 2003 or 2004, with the Ironman logo on them.  *See Plaintiff's Concise Statement of Facts Exhibit E at 52*.

Based on the following, the court GRANTS IN PART and DENIES IN PART the Plaintiff's motion.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).  The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *T.W. Elec.*

*Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).

Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quoting *Celotex*, 477 U.S. at 322). In the instant case, a trademark infringement action, the Defendants have raised the affirmative defense of prior and continuous use; because the Defendants would have the burden to demonstrate prior and continuous use at trial (*see* discussion *infra*), the Defendants "must set forth specific facts showing that there is a genuine issue for trial" and may not simply rest on their pleadings. Federal Rule of Civil Procedure 56(e).

## IV.  ANALYSIS

The Plaintiff has moved for summary judgment as to four counts in its First Amended Complaint:  Count I (Violation of the Lanham Act); Count II (Violation of HRS chapter 481A); Count III (Common Law Unfair Competition); and Count VI (Declaratory Judgment).  Based on the following, the court GRANTS IN PART and DENIES IN PART the Plaintiff's motion for partial summary judgment.

A.      The Plaintiff is entitled to summary judgment on its Lanham Act claim

As discussed more fully *infra*, there is no genuine issue of material fact as to the Plaintiff's ownership of the "Ironman" mark. Furthermore, there is no genuine issue of material fact as to whether the Defendants' actions create a likelihood of confusion. Although the Defendants assert that they are the rightful owners of the Ironman race and trademark, the Defendants are incorrect.

**1.      WTC has four incontestable trademarks; the Defendants have no valid claim to use the trademarks**

There is no genuine issue of material fact regarding the Plaintiff's ownership of and entitlement to use the Ironman trademark. First, the Plaintiff has shown that it has four "incontestable" trademarks. Second, although the term "incontestable" is a misnomer, as there are ways to defend against an infringement suit brought by the holder of an incontestable trademark, the Defendants have not set forth a valid defense in this case. Each of these issues is addressed in turn.

a.      The Plaintiff has four "incontestable" trademarks

Pursuant to the Lanham Trade-Mark Act, 15 U.S.C. § 1051 *et seq.*, a federally registered trademark can become "incontestable." Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b), explains the benefit of having an incontestable mark:

To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, *the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce*.

(Emphasis added.)  *See also Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985) (discussing incontestability under the Lanham Act)*; Pyrodyne Corp. v. Pyrotronics Corp.*, 847 F.2d 1398 (9th Cir. 1988) (same).  Even if a trademark has not met the conditions for incontestability, however, the mere fact that a trademark is registered "shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration," subject to "legal or equitable defense[s] or defect[s]."  15 U.S.C. § 1115(a).

The Defendants, however, argue that the Plaintiff's trademarks are not incontestable.  Section 15 of the Lanham Act, 15 U.S.C. § 1065, lists the conditions that must be satisfied for a registered trademark to be deemed incontestable; the Defendants argue that the Plaintiff's marks are not incontestable because one of the those conditions -- that the federally registered mark not

6

"infringe[] a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of [federal] registration" -- has not been met.[3]  In other words, the Defendants argue that WTC does not have an incontestable mark in the Ironman name because the Defendants have been continuously using the Ironman mark commercially since before the Hawaiian Triathlon Corporation ("HTC," purchased by WTC in 1989) registered the mark in 1983.  Therefore, the Defendants contend, WTC does not have incontestable trademarks and does not have the exclusive right to use the Ironman name.  The court disagrees.

There are two reasons why the Defendants' claim of prior and continuous use fails:  first, the Defendants are precluded from arguing prior and continuous use because of the decision in *Gordon W. Haller, et al. v. Hawaiian Triathlon Corp., et al.*, Civil No. 89-3623 (Haw. Circuit Court 1993) ("*Haller*"); second, even if preclusion did not apply to this case, the Defendants have failed to demonstrate prior and continuous use.  Each of these issues is addressed in turn.

**i.      The *Haller* case precludes the Defendants from arguing prior and continuous use**

---

[3] The Plaintiff asserts that the remaining conditions for incontestability have been met, and the Defendants do not contest this assertion.

The doctrine of claim preclusion provides that a final judgment on the merits in one action bars subsequent re-litigation of the same claim by the same parties. *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Dorrance v. Lee*, 90 Haw. 143, 148-49, 976 P.2d 904, 909-10 (1999). WTC argues that the Defendants are precluded from arguing prior and continuous use because of the doctrine of claim preclusion. The court agrees.

As an initial matter, the court looks to Hawaii law to determine the preclusive effect of the state court judgment in *Haller*. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). Under Hawaii law, "[r]es judicata will bar relitigation where (1) the issue decided in the prior adjudication is identical with the one presented in the action in question, (2) there was final judgment on the merits, and (3) the party against whom res judicata is asserted was a party or in privity with a party to the prior adjudication." *Dorrance*, 90 Haw. at 148, 976 P.2d at 909 (quoting *Foytik v. Chandler*, 88 Haw. 307, 315, 966 P.2d 619, 627 (1998)).

The court concludes that a Hawaii court would dismiss the Defendants' assertion of prior and continuous use pursuant to the doctrine of claim

preclusion.  First, the issue decided in the *Haller* case is identical to the issue

presented in the current case:  *Haller* involved claims by Dunbar, Hapai, and the

other defendants that they and HITOC owned Ironman and that HTC and WTC

did not have a valid property interest in the Ironman race.  The court finds no

meaningful distinction between the Defendants' claims that they own the Ironman

race itself and the Defendants' claim that they own the Ironman trademark:  both

claims involve questions of ownership of intellectual property, and both claims

arise out of the same series of transactions.  *See Kauhane v. Acutron Co., Inc.*, 71

Haw. 458, 464, 795 P.2d 276, 279 (1990) ("To determine whether a litigant is

asserting the same claim in a second action, the court must look to whether the

'claim' asserted in the second action arises out of the same transaction, or series of

connected transactions, as the 'claim' asserted in the first action." (Citing

Restatement (Second) of Judgments § 24 (1982).) (Footnote omitted.)).  Second,

there was a final judgment on the merits:  the circuit court concluded that the

plaintiffs' claims in *Haller* were barred by the statute of limitations, and a

judgment based on the statute of limitations is "on the merits" for purposes of

claim preclusion.  *Ellingson v. Burlington N., Inc.*, 653 F.2d 1327, 1330 n.3 (9th

Cir. 1981).  *See* Hawaii Rules of Civil Procedure Rule 41(b) ("Unless the court in

its order for dismissal otherwise specifies, a dismissal under this subdivision and

any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 2373 (2005 supp.) ("A dismissal for failure to comply with a statute of limitations is a final adjudication on the merits[.]").  Third, the parties against whom res judicata is asserted (Dunbar and Hapai) were parties in *Haller*, as was WTC's predecessor in interest (HTC). Consequently, the court concludes that the Defendants are precluded from defending against WTC's infringement action on the basis that they have continuously used the Ironman mark since a date prior to HTC's initial federal registration of that mark.

> ii.    **Even if claim preclusion did not apply to this case, there is no evidence to support the Defendants' claim of prior and continuous use**

Section 1065 places the burden on the Defendants to demonstrate prior and continuous use.  *Casual Corner Assocs., Inc. v. Casual Stores of Nevada, Inc.*, 493 F.2d 709, 712 (9th Cir. 1974).  The Defendants have failed to meet this burden.

The fact that the Ironman marks have been registered on the principal register is prima facie evidence that WTC owns the marks and therefore has the

exclusive right to use the marks.  Because WTC has put forth prima facie evidence

of its exclusive right to use the marks, the burden shifts to the Defendants to

provide evidence that they and HITOC have a right to use the marks.  As the Ninth

Circuit explained in *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir.

2002):

> [T]he plaintiff in an infringement action with a registered mark
> is given the prima facie or presumptive advantage on the issue
> of validity, thus shifting the burden of production to the
> defendant to prove otherwise . . . .  Or, to put it as we did in
> *Vuitton* [*et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769 (9th
> Cir. 1981)], the defendant then bears the burden with respect to
> invalidity.  Once the presumption of validity is overcome,
> however, the mark's registration is merely evidence "of
> registration," nothing more. This approach can be characterized
> as rebutting the prima facie case or "piercing the presumption."

The Defendants claim that they have continually used the Ironman

mark since the late 1970s -- before WTC and its predecessor registered the marks

-- such that they (the Defendants) can rebut the presumption of validity of the

registered trademarks.  *See Brookfield Commc'ns, Inc. v. West Coast Entm't*

*Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) (holding that a defendant in a

trademark suit can rebut the presumption of validity of a registered mark "by

showing that it used the mark in commerce first, since a fundamental tenet of

trademark law is that ownership of an inherently distinctive mark . . .  is governed

11

by priority of use").  The Defendants claim that the Plaintiff has not met the

conditions set forth in 15 U.S.C. § 1065, and thus does not have incontestable

trademarks, because "a registration is not incontestable to the extent that it

infringes on another's valid rights in the mark acquired under state law by a use

continuing from a date prior to the federal registration of the mark."  *Watec Co.,*

*Ltd. v. Liu*, 403 F.3d 645, 652 (9th Cir. 2005).  The Defendants have the burden to

prove senior rights in the mark by showing:  (1) that their use of the mark began

before the mark's registration and publication; and (2) that they have continuously

used the mark since that time.  *Casual Corner*, 493 F.2d at 712.

The Defendants have utterly failed to meet this burden.  While there

is some evidence to suggest that Dunbar made sporadic use of the trademark in the

1980s, 1990s, and 2000s, and there is also some evidence that Hapai made some

use of the trademark in 2003 or 2004, the Defendants fall well short in their

attempt to demonstrate continuous commercial use.  Dunbar testified during the

October 7, 2005 hearing that he produced Ironman trophies and that these trophies

were "made available" continuously since 1980.[4]  This statement, along with the

two flyers, is insufficient to establish continuous use for over twenty years.  At

---

[4] In support of this claim, Dunbar offered into evidence two flyers reflecting offers to sell Ironman trophies.  Although Dunbar's testimony was not specific regarding these flyers, the flyers appear to offer the sale of trophies in 1983 and 1989.

most, Dunbar's testimony established that he advertised trophies for sale in 1983

and 1989 and otherwise made trophies "available" for sale.  The documentation

provided by the Defendants in their Concise Statement of Facts in opposition to

the Plaintiff's Motion for Summary Judgment includes one of the above-

referenced flyers, but otherwise fails to contain *any* information supporting their

claim of establishing prior and continuous use.[5]  Absent affirmative evidence of

continuous use, the Defendants' claim to a senior right in the mark fails.  *See*

*Casual Corner*, 493 F.2d at 712 ("The . . . failure to use the mark for the one-year

period prevents [the defendant] from claiming that it falls within the exception of

section 1065 requiring a continuing use.").  The Defendants' bare assertions of

---

[5] The Defendants have also attached a four-page document to their Memorandum Opposing Summary Judgment.  This document, entitled "IRONMAN TRADEMARK/SERVICE MARK USE BY JOHN DUNBAR ('HITOC')," appears to be a table of contents of 64 exhibits purporting to establish a timeline of continuous commercial use from 1978 to the present.  The 64 exhibits corresponding to this table of contents were not attached, although many of the documents listed in the table of contents appear to have been provided to the court in different contexts.  (For example, the court has received copies of advertisements for Ironman trophies as well as articles from the late 1970s and early 1980s describing Ironman events.)  The exhibit was not supported by an affidavit and failed to set forth facts "as would be admissible in evidence." Fed. R. Civ. P. 56(e).

This four-page document is not evidence and is not sufficient to defeat the Plaintiff's motion for summary judgment.  Furthermore, even if an appropriate declaration had been filed along with the exhibits, the Defendants would still not survive summary judgment.  The Defendants cannot show continuous commercial use of the Ironman mark:  for example, all of the entries between 1989 and 1991 relate to the *Haller* lawsuit and not to any commercial transaction.  In short, there is no genuine issue of material fact as to whether the Defendants have continuously used the Ironman mark in commerce.  *See Casual Corner*, 493 F.2d at 712 ("To be a continuing use, the use must be maintained without interruption.").

13

continuous use are insufficient to create a genuine issue of material fact and, as such, are insufficient to survive summary judgment.

In sum, the court concludes that WTC has four "incontestable" Ironman trademarks.  This incontestable status is "conclusive evidence of the . . . registrant's exclusive right to use the registered mark in commerce."  15 U.S.C. § 1115(b).  Nevertheless, there are several defenses to incontestability set forth in § 1115(b), and the court now turns to these defenses.

      b.    <u>"Incontestable" means conclusively proven, but still subject to defense of fraud</u>

Even if a trademark is incontestable within the meaning of the Lanham Act, a defendant in an infringement suit can still argue that the incontestable mark was obtained fraudulently.  15 U.S.C. § 1115(b)(1).  *See also Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1031 (N.D. Cal. 2003) ("As a rule, a trademark registration, even if incontestable, is invalid if it was fraudulently obtained.").  In the instant case, the Defendants argue (as a defense to WTC's infringement action) that WTC committed fraud in registering its Ironman trademarks.[6]

---

[6] The Defendants do not argue that any other defense to an incontestable trademark contained within 15 U.S.C. § 1115(b) applies to this case.

14

The Defendants' argument is without merit.  At its core, the Defendants' argument is that HITOC, rather than WTC, owns the Ironman race; the Defendants do not allege any fraud in the procurement of the federal registration other than that WTC's predecessor, HTC, was not the lawful owner of the Ironman (and consequently did not have the right to register the Ironman marks).  As previously discussed, the Defendants already had one opportunity to argue that WTC was not the rightful owner of the Ironman.  The court understands the Defendants' frustration with this result, as the circuit court never decided whether Silk, Grundman, HTC or WTC acted fraudulently.  Nevertheless, the doctrine of claim preclusion requires that the court treat the *Haller* case as though the circuit court did, in fact, decide the fraud issue in favor of HTC and WTC.  Therefore, the Defendants' defense of fraud is without merit.

In sum, the Defendants have failed to present a genuine issue of material fact as to their entitlement to use the Ironman mark.  WTC has the exclusive right to the Ironman mark, and the Defendants have no legal right to use it.  The court now turns to the next issue -- whether WTC has demonstrated that the Defendants have infringed on its trademarks.

**2.      The Defendants' actions create a likelihood of confusion**

15

WTC has the burden to demonstrate that the Defendants' use of the

Ironman mark creates a likelihood of confusion.  *See KP Permanent Make-Up,*

*Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 112 (2004) ("Section 1115(b)

places a burden of proving likelihood of confusion (that is, infringement) on the

party charging infringement even when relying on an incontestable registration.").

The Ninth Circuit has set forth the standard for demonstrating a

likelihood of confusion:

> To determine whether there is a likelihood of confusion
> between the parties' allegedly related goods and services, we
> consider the following eight *Sleekcraft*[7] factors: (1) strength of
> the mark;  (2) proximity of the goods;  (3) similarity of the
> marks;  (4) evidence of actual confusion;  (5) marketing
> channels used;  (6) type of goods and the degree of care likely
> to be exercised by the purchaser;  (7) defendant's intent in
> selecting the mark;  and (8) likelihood of expansion of the
> product lines.
>      . . . In essence, "[t]he test for likelihood of confusion is
> whether a 'reasonably prudent consumer' in the marketplace is
> likely to be confused as to the origin of the good or service
> bearing one of the marks." [*Dreamwerks Prod. Group, Inc. v.
> SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).]

*M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005) (citation

omitted) (some alterations in original and some added).  "The test is a fluid one

and the plaintiff need not satisfy every factor, provided that strong showings are

---

[7] *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

made with respect to some of them." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005). *See also GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208 (9th Cir. 2000) ("[I]n situations in which the appearance of the conflicting marks and the services provided are almost identical, 'the strength of the mark is of diminished importance in the likelihood of confusion analysis.'" (Quoting *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1059 (9th Cir. 1999).)).

There is no genuine issue of material fact as to whether the Defendants' actions create a likelihood of confusion. WTC's Ironman mark is well-known, and the Defendants are using an identical mark. Dunbar advertised his trophies in the same publications used by WTC to advertise its events, and he chose this mark because he believed he owns the event (*i.e.*, he chose this mark knowing that another entity was using the identical mark). Although the evidence of Hapai's infringement is more limited, there is uncontroverted evidence that Hapai has infringed on the Plaintiff's trademarks by selling or receiving t-shirts with the Ironman logo on them. In short, Dunbar and Hapai are attempting to take commercial advantage of WTC's trademarks.

The Defendants argue that the Plaintiff's motion should be denied because of laches.  The Ninth Circuit has instructed district courts to consider the following factors in examining the issue of laches:

> (1) the strength and value of the trademark rights asserted; (2) the senior user's diligence in enforcing the mark; (3) the harm to the senior user if relief is denied; (4) whether the junior user acted in good faith ignorance of the senior's rights; (5) the degree of competition between senior and junior users; and (6) the extent of harm suffered by the junior user because of the senior user's delay in asserting his rights.

*Am. Intern. Group, Inc. v. Am. Intern. Bank*, 926 F.2d 829, 831 (9th Cir. 1991).

*See also Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002) ("[T]he party asserting laches . . . must show that (1) [the plaintiff's] delay in filing suit was unreasonable, and (2) [the defendant] would suffer prejudice caused by the delay if the suit were to continue.").

The Defendants' argument is without merit.  The Defendants have known, since at least 1993, that they have no ownership rights in the Ironman trademarks.  The Defendants knew that the Plaintiff continued to use the trademarks commercially.  The Defendants have used the Plaintiff's trademarks only sporadically since 1993:  Dunbar advertised trophies for sale in 1983 and 1989; he organized an Ironman-length triathlon in the mid-1990s; and he and Hapai sold some t-shirts in 2003 and 2004.  The Plaintiff's decision to forego

court action until 2005 was not unreasonable, given that the Defendants often went years at a time without engaging in any infringing activity. *Jarrow Formulas,* 304 F.3d at 838 ("[L]aches penalizes *inexcusable* dilatory behavior[.]" (Emphasis added.)).  When the Defendants increased their level of infringement in 2003 and 2004 -- Dunbar filed two applications to register Ironman Triathlon trademarks with the Hawaii Department of Commerce and Consumer Affairs (DCCA) in December 2003, and Dunbar and Hapai sold t-shirts in 2003 and 2004 -- WTC took legal action.  Therefore, the Defendants' reliance on laches is without merit.

The Defendants also argue that the Plaintiff should be estopped from bringing this suit.  The Defendants do not articulate this argument in their initial Answer, their Answer to the First Amended Complaint, or their Opposition to Plaintiff's Motion for Partial Summary Judgment.  The court cannot discern any reason why estoppel should apply to the instant case.  Similarly, the Defendants state that they "raised equitable defenses" in their Answer to the Plaintiff's initial Complaint.  The Defendants' entire defense rests on the Defendants' mistaken belief that they own the Ironman trademarks, however, and as already discussed, the Plaintiff owns the marks and the Defendants have no valid claim to these marks.

In sum, the Plaintiff is entitled to summary judgment as to its Lanham

Act claim.

B.     The Plaintiff is entitled to summary judgment as to its HRS chapter 481A
       claim and the Defendants' HRS chapter 481A counterclaim

       "An alleged trademark infringement may . . . give rise to a deceptive

trade practices action under HRS § 481A-3,[8] which provides protection against

---

[8] HRS § 481A-3, entitled "Deceptive trade practices," provides:

       (a) A person engages in a deceptive trade practice when, in the course of
the person's business, vocation, or occupation, the person:
       (1) Passes off goods or services as those of another;
       (2) Causes likelihood of confusion or of misunderstanding as to the
source, sponsorship, approval, or certification of goods or services;
       (3) Causes likelihood of confusion or of misunderstanding as to
affiliation, connection, or association with, or certification by, another;
       (4) Uses deceptive representations or designations of geographic
origin in connection with goods or services;
       (5) Represents that goods or services have sponsorship, approval,
characteristics, ingredients, uses, benefits, or quantities that they do not
have or that a person has a sponsorship, approval, status, affiliation, or
connection that the person does not have;
       (6) Represents that goods are original or new if they are
deteriorated, altered, reconditioned, reclaimed, used, or secondhand;
       (7) Represents that goods or services are of a particular standard,
quality, or grade, or that goods are of a particular style or model, if they are
of another;
       (8) Disparages the goods, services, or business of another by false
or misleading representation of fact;
       (9) Advertises goods or services with intent not to sell them as
advertised;
       (10) Advertises goods or services with intent not to supply
reasonably expectable public demand, unless the advertisement discloses a
limitation of quantity;
       (11) Makes false or misleading statements of fact concerning the
reasons for, existence of, or amounts of price reductions; or
       (12) Engages in any other conduct which similarly creates a
                                                          (continued...)

the marketing of products or services in a manner which causes a 'likelihood of confusion' as to their source, sponsorship, approval, or certification or as to their affiliation, connection or association with products or services already established in the marketplace." *Carrington v. Sears, Roebuck & Co.*, 5 Haw.App. 194, 198, 683 P.2d 1220, 1225 (1984). The Hawaii Intermediate Court of Appeals ("ICA") therefore held that "the 'likelihood of confusion' test is determinative of whether a trade practice is deceptive under HRS § 481A-3(a)(2), (3)." *Id.* at 198-99, 683 P.2d at 1225. The ICA then examined the eight factors set forth in *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201 (1st Cir. 1983), to determine whether a likelihood of confusion existed; those eight factors are nearly identical to the *Sleekcraft* factors. *Id.* at 199-200, 683 P.2d at 1226.

---

(...continued)
> likelihood of confusion or of misunderstanding.

> (b) In order to prevail in an action under this chapter, a complainant need not prove competition between the parties or actual confusion or misunderstanding.
> (c) This section does not affect unfair trade practices otherwise actionable at common law or under other statutes of this State.

HRS § 481A-4, entitled "Remedies," provides in relevant part that "[a] person likely to be damaged by a deceptive trade practice of another" may be entitled to an injunction, costs, and attorneys' fees. *See also Balthazar v. Verizon Hawaii, Inc.*, 109 Haw. 69, 77, 123 P.3d 194, 202 (2005) ("Claims alleging a deceptive trade practice under HRS chapter 481A and seeking injunctive relief do not require a showing of actual injury but only that there is likelihood of injury.").

Although the ICA has recognized that "[t]he question of whether an unfair or deceptive trade practice exists is a question of fact," *Kukui Nuts of Hawaii Inc. v. R. Baird & Co., Inc.*, 7 Haw.App. 598, 612, 789 P.2d 501, 511 (1990), the ICA in *Carrington* affirmed a lower court's grant of summary judgment because no genuine issue of material fact existed as to whether there was a likelihood of confusion. The ICA stated that "[w]here, as in the instant case, the evidence regarding those factors is undisputed, the trial court may determine as a matter of law whether a likelihood of confusion exists." *Id.* at 200, 683 P.2d at 1226. The ICA affirmed the circuit court's grant of summary judgment in favor of the defendant, concluding that the plaintiff "could not succeed on either the trademark infringement or the deceptive trade practice action." *Id.* at 204, 683 P.2d at 1228.

As discussed *supra*, there is no genuine issue of material fact as to whether Dunbar and Hapai (individually and d/b/a HITOC) have created a likelihood of confusion in selling goods with the Ironman trademark. *See id.* at 199, 683 P.2d at 1225-26 ("A likelihood of confusion exists when consumers confronted with products or services bearing one label or mark would be likely to assume that the source of the products or services is the same as or associated with the source of a different product or service identified by a similar mark.").

Consequently, WTC is entitled to summary judgment as to its HRS chapter 481A claim.  WTC is also entitled to summary judgment as to the Defendants' HRS chapter 481A counterclaim.

C.      Common law unfair competition

As the ICA recently explained:

[T]o prevail in an action for unfair competition, the plaintiff must establish (1) the 'palming off' of defendant's product as plaintiff's product, or (2) 'consumer-confusion' between the two products because plaintiff's product had acquired a secondary meaning or because of other reasons, or (3) misappropriation of plaintiff's property or merchandise through misrepresentation or some other form of commercial immorality.

*Meridian Mortg., Inc. v. First Hawaiian Bank*, 109 Haw. 35, 49, 122 P.3d 1133, 1147 (App. 2005), *cert. denied*, 125 P.3d 1059 (2005) (citation and internal quotation signals omitted).  WTC is entitled to summary judgment as to its unfair competition claim based on the third prong of this test:  the Defendants have misappropriated WTC's intellectual property by advertising and selling products with the Ironman trademark, and have done so by misrepresenting to consumers that they own the Ironman mark.  There is no genuine issue of material fact as to this claim, and WTC is therefore entitled to summary judgment.  Similarly, WTC

is entitled to summary judgment as to the Defendants' counterclaim of common law unfair competition.

D.   Declaratory relief

The Plaintiff's First Amended Complaint seeks a declaration that WTC has superior and exclusive rights to the Ironman marks and that the Defendants have no ownership or other rights in the Ironman marks.  For the reasons discussed *supra*, the court grants WTC's motion for summary judgment on this issue.

WTC's summary judgment motion also asks the court to order the Hawaii Department of Commerce and Consumer Affairs (DCCA) to revoke Dunbar's state trademark registrations pursuant to HRS § 482-28.5, which provides that "[t]he director [of DCCA] shall cancel the registration of a mark if the director receives a request for cancellation from the registrant or assignee of record *or when a court of competent jurisdiction orders cancellation of a registration*."  (Emphasis added.)  WTC maintains that there is no genuine issue of material fact as to its entitlement to this relief.  The court agrees that the Defendants do not own the Ironman Triathlon mark and that these marks *should* be cancelled by DCCA; nevertheless, the court concludes that it does not have the authority to *order* DCCA to take this action.

The Plaintiff argues that HRS § 482-28 provides the court with the authority to order the cancellation of Dunbar's state trademarks.  HRS chapter 482 does not define "court of competent jurisdiction," and the Hawaii courts do not appear to have interpreted this phrase within the context of HRS chapter 482, although the phrase appears in numerous other statutes and Hawaii Supreme Court opinions.  *See*, *e.g.*, HRS § 431:10C-308.5(e) ("If the provider and the insurer are unable to resolve the dispute, the provider, insurer, or claimant may submit the dispute to the commissioner, arbitration, or court of competent jurisdiction."); *Lingle v. Hawaii Gov't Employees Ass'n*, 107 Haw. 178, 186, 111 P.3d 587, 595 (2005) ("As a general rule, a collateral attack may not be made upon a judgment rendered by a court of competent jurisdiction.").

The use of the phrase "court of competent jurisdiction" throughout Hawaii statutes and caselaw appears consistent with the definition in Black's Law Dictionary:  "A court that has the power and authority to do a particular act; one recognized by law as possessing the right to adjudicate a controversy."  Black's Law Dictionary 357 (7th ed. 1999).  This definition, however, does not fully explain the elements that must be present for a court to order DCCA to cancel a state registration.  Within the context of HRS § 482-28, "court of competent jurisdiction" could mean a court with subject matter jurisdiction or a court with

25

personal jurisdiction (or both).  In other words, the phrase "court of competent

jurisdiction" could mean that:  (1) any court can order the Director of DCCA to

cancel a registration so long as the court has jurisdiction over the parties'

trademark dispute (as in the instant case); or (2) a court may order the Director of

DCCA to cancel a registration only where DCCA is a party (thus giving the court

personal jurisdiction over DCCA); or (3) a court must have both personal and

subject matter jurisdiction to be authorized to order DCCA to cancel a state

registration.

        The court concludes that it does not have personal jurisdiction over

DCCA, and thus is not a "court of competent jurisdiction" within the meaning of

HRS § 482-28.  *See*, *e.g.*, *Prudential Ins. Co. of Am. v. Nelson*, 11 F. Supp. 2d 572,

577 (D.N.J. 1998) ("In the general sense, a California court is clearly a court of

competent jurisdiction.  However, as that term is used in [a consent decree

between the parties], California is not a court of competent jurisdiction because it

lacks jurisdiction over [the defendant]."); *see also United States v. Morton*, 467

U.S. 822, 828 (1984) (concluding that "court of competent jurisdiction," as used in

the Social Security Act, referred to a court's subject matter jurisdiction, but

recognizing that "[t]he concept of a court of 'competent jurisdiction[]' . . . has also

been used on occasion to refer to a court's jurisdiction over the defendant's person").

This court is a court of limited jurisdiction, and simply will not order a state entity to engage in or refrain from a particular activity absent clear constitutional or statutory authority to do so.  Thus, although there is no genuine issue of material fact as to WTC's ownership of the Ironman trademarks and the Defendants' lack of entitlement to use those trademarks, the court declines to order DCCA to cancel the trademark because it is not a "court of competent jurisdiction" within the meaning of HRS § 482-28.

## V.  CONCLUSION

For the foregoing reasons, the court GRANTS the Plaintiff's Motion for Partial Summary Judgment as to its Lanham Act, HRS chapter 481A, and common law unfair competition claims.  The court also GRANTS the Plaintiff's request for declaratory relief:  WTC has superior and exclusive rights to the Ironman marks and the Defendants have no ownership or other rights in the Ironman marks.  The court DENIES the Plaintiff's request for an order requiring the Director of DCCA to cancel the Defendants' state registrations.

\\

\\

27

\\

\\

\\

\\

\\

The following claims remain against Dunbar and Hapai, individually and d/b/a HITOC:  Count IV (Tortious Interference with Business Relations) and Count V (Slander of Title).

IT IS SO ORDERED.

DATED at Honolulu, Hawaii, April 5, 2006.



J. Michael Seabright
United States District Judge

*World Triathlon Corporation v. John Dunbar et al.*, Civ. No. 05-00351JMS/KSC, Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment